# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MANUEL QUINTERO,<br><br>          Petitioner,<br><br>     v.<br><br>TRISTAN LEMON,<br><br>          Respondent. | Case No. 1:22-cv-01568-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

On September 7, 2018, Petitioner was convicted after a jury trial in the Kern County Superior Court of voluntary manslaughter, assault with a semiautomatic firearm, assault with a firearm, unlawful firearm possession, and active gang participation. The jury found true various gang and firearm enhancements. (5 CT[1] 1123–37.) On January 29, 2019, Petitioner was sentenced to an imprisonment term of thirty-six years and four months. (6 CT 1458.) On August 23, 2021, the California Court of Appeal, Fifth Appellate District ordered the convictions on Counts 5 and 7 (lesser-included charges of assault with a firearm) stricken and affirmed the

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent. (ECF No. 9.)

judgment in all other respects. <u>People v. Quintero</u>, No. F078802, 2021 WL 3720838, at *1, 11 (Cal. Ct. App. Aug. 23, 2021). On October 27, 2021, the California Supreme Court denied the petition for review. (LDs[2] 14, 15.) On January 14, 2022, Petitioner filed a state petition for writ of habeas corpus in the Kern County Superior Court, which denied the petition. (LDs 16, 17.)

On December 5, 2022, Petitioner filed a petition for writ of habeas corpus raising the following claims for relief: (1) sufficiency of the evidence; and (2) prosecutorial misconduct. (ECF No. 1.) On January 31, 2023, Respondent filed an answer. (ECF No. 10.) On May 10, 2023, Petitioner filed a traverse. (ECF No. 14.) That same day, Petitioner filed a motion to stay the instant proceedings while his resentencing petition was pending in state court. (ECF No. 15.) On June 20, 2023, the Court granted the motion to stay. (ECF No. 16.) On April 9, 2024, the Court lifted the stay. (ECF No. 23.)

**II.**

**STATEMENT OF FACTS[3]**

Brothers Joel and Victor Quintero were jointly tried for gang-related murder and other crimes arising out of a shooting at a gas station and convenience store one night. The evidence conclusively established the Quintero brothers possessed a single firearm and initiated a physical confrontation with two other brothers—Rolando and Eraldo Castro.[4]

After the initial confrontation, the parties separated but the Castros did not back down. Ultimately, gunfire killed Eraldo.

. . .

The incident took place at gas station with a convenience store. It was captured on multiple surveillance cameras. On video, the Quinteros pull in next to one of the gas pumps. There are several other patrons at the pumps and inside the store. Eventually, as Joel is standing inside the open driver's door, the Castros drive through the pumps, directly past Joel, and park on the store's side. Joel watches as the Castros turn in front of him and tracks the car as it drives past.

After the Castros park, they exit their car and walk to the store's entrance. Rolando is wearing an open red and black plaid shirt. At the store's threshold, something in the parking lot catches Rolando's attention and he turns his head toward Victor who is now approaching through the parking lot. Rolando holds the door open and steps aside. As Victor nears the door, he retrieves a firearm from

---

[2] "LD" refers to the documents lodged by Respondent. (ECF No. 9.)
[3] The Court relies on the California Court of Appeal's August 23, 2021 opinion for this summary of the facts of the crime. <u>See</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).
[4] We refer to the parties by their first names for clarity and consistency with the record.

his waist area, places his hand atop it, and then replaces the firearm. At this point he is face to face with Rolando.

Eraldo then confronts Victor. Victor pushes back and the two begin fighting. Victor quickly retreats and hands Joel, who by now is walking toward the storefront, the firearm. Victor resumes the fight. As Joel nears, he pulls out the firearm from his right side and points it at Eraldo's head. Joel simultaneously motions with his other hand atop the firearm in a manner consistent with chambering a round in a semiautomatic firearm.[5] The parties then separate and return to their respective vehicles.

While on the way to the pump, Joel looks back and points at the Castros multiple times. He again retrieves an object from the same area from which he had just pulled the firearm moments prior. Joel eventually reenters the driver's seat. Victor lingers near the passenger side before jogging to the storefront to retrieve a hat he lost during the confrontation.

Meanwhile, the Castros convene near the driver's door to their car. They converse while facing the Quintero car. When Victor goes to pick up his hat, the Castros visibly react to his presence.

As Victor returns to the Quintero car, Joel reverses it quickly with the door ajar before closing it. Victor reenters the passenger seat after returning with his hat.

Meanwhile, Rolando enters the driver's seat to their vehicle; Eraldo remains near the parking spot. Seconds later, Rolando drives through the parking lot and sideswipes[6] the driver's side of the Quintero car. He continues and drives past and around the pump. At the same time, Eraldo uses the car as cover, rushes from the parking spot, and throws a handful of punches at Joel through the driver's window. Within seconds he is shot from inside the Quintero vehicle and later passes away.

Law enforcement quickly identified the Quinteros as the shooting party, ascertained their location, and set out to arrest them. The Quinteros did not immediately surrender.[7] One law enforcement officer testified overhearing Victor state, "I guess I killed him."

Although no firearm was found, the evidence indicated Joel had stolen a firearm within two months prior to the shooting. He also posted a picture of a semiautomatic firearm on Facebook two days before the crime.

A gang expert testified the Sureño and Norteño gangs are rival gangs. The Quinteros were Sureño gang members. Sureños identify with the color blue while Norteños identify with the color red. The "Sureños have a standing order to attack any [Norteños] when they come into contact with them" "but that doesn't happen every single time they come across paths." The Sureños maintain "dominance" in the region by "attacking" rivals and committing crimes to intimidate the community.

*///*

---

[5] A law enforcement officer testified and explained these mechanics to the jury.

[6] A law enforcement officer estimated the collision occurred at approximately "[t]wenty to 25 miles per hour."

[7] The parties stipulated Victor surrendered in 20 minutes. Joel surrendered in 75 minutes.

On a prior occasion, the Quinteros had accosted a man with a red bandana. On another, Victor had assaulted a man wearing a red shirt.[8]

Quintero, 2021 WL 3720838, at *1–2 (footnotes in original).

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this

---

[8] The parties stipulated Victor was "convicted of a misdemeanor ... battery" for this incident. Joel was not involved.

Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 584 U.S. 122, 125 (2018); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state courts reach a decision on the merits but there is no reasoned decision, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot

analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

### IV.

### REVIEW OF CLAIMS

**A. Sufficiency of the Evidence**

1. Legal Standard

The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

"'After AEDPA, we apply the standards of Jackson with an additional layer of deference' to state court findings." Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011) (alteration omitted) (quoting Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005)). As the Supreme Court has stated,

> Jackson . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees

1    with the state court. The federal court instead may do so only if the state court
2    decision was "objectively unreasonable."

3    Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773
4    (2010)).

5         2.   Self-Defense

6         In his first claim for relief, Petitioner asserts that there was insufficient evidence to

7    disprove self-defense. (ECF No. 1 at 7–9.[9]) Respondent argues that a fairminded jurist could find

8    that self-defense was disproven. (ECF No. 10 at 12.) This claim was raised on direct appeal to

9    the California Court of Appeal, which denied the claim in a reasoned opinion. The California

10   Supreme Court summarily denied Petitioner's petition for review. As federal courts review the

11   last reasoned state court opinion, the Court will "look through" the summary denial and examine

12   the decision of the California Court of Appeal. See Wilson, 584 U.S. at 125.

13        In denying the sufficiency of the evidence claim regarding self-defense, the California

14   Court of Appeal stated:

15        The Quinteros argue they "full[y] and complete[ly]" ceased "hostilities" and
          "absolutely were within their right to self-defense in the face of the Castro
16        brothers' unprovoked two-pronged attack." However, applying the reviewing
          standard leads us to conclude the jury could reasonably find beyond a reasonable
17        doubt the Quinteros had not clearly withdrawn from the fight prior to the
          shooting. Alternatively, the jury could have found the responsive gunfire
18        unreasonable.

19        "When considering a challenge to the sufficiency of the evidence to support a
          conviction, we review the entire record in the light most favorable to the judgment
20        to determine whether it contains substantial evidence—that is, evidence that is
          reasonable, credible, and of solid value—from which a reasonable trier of fact
21        could find the defendant guilty beyond a reasonable doubt." (People v. Lindberg
          (2008) 45 Cal.4th 1, 27 (Lindberg).) "We presume in support of the judgment the
22        existence of every fact the trier of fact reasonably could infer from the evidence.
          [Citation.] If the circumstances reasonably justify the trier of fact's findings,
23        reversal of the judgment is not warranted simply because the circumstances might
          also reasonably be reconciled with a contrary finding. [Citation.] A reviewing
24        court neither reweighs evidence nor reevaluates a witness's credibility." (Ibid.)

25        The prosecution bears the burden to disprove self-defense. (People v. Rodarte
          (2014) 223 Cal.App.4th 1158, 1168.) An initial aggressor has no right to self-
26        defense unless he or she "really and in good faith" withdraws from combat.
          (People v. Trevino (1988) 200 Cal.App.3d 874, 879.) If, however, "a victim of a
27        simple assault engages in a sudden and deadly counterassault, the original

28   _____
     [9] Page numbers refer to the page numbers stamped at the top of the page.

                                            8

aggressor need not attempt to withdraw, and may reasonably use necessary force in self-defense."[10] (*Ibid.*; CALCRIM No. 3471.) "[A]n original aggressor may communicate withdrawal either by words or by conduct." (*People v. Hernandez* (2003) 111 Cal.App.4th 582, 588.)

Here, the jury could have reasonably concluded the Quinteros had not clearly withdrawn. After all, they remained within striking distance of the Castros the entire time leading up to the shooting. In fact, Joel repeatedly pointed at the Castros and at various times wielded a firearm. When Victor exited the vehicle to retrieve his hat, the Castros are visibly apprehensive. These facts readily support a conclusion withdrawal was not reasonably communicated, let alone accomplished in actual good faith.

The jury could also have concluded, notwithstanding withdrawal, the gunshot was excessive. Certainly, a person sitting in a car after being sideswiped and punched would justifiably feel fear.[11] Whether immediately resorting to gunfire is a reasonable reaction is a highly fact-intensive inquiry naturally left to the jury.

The fact is in this case neither Quintero suffered serious, if any, injury. With no reason to believe the Castros were armed with a weapon,[12] the jury could reasonably believe the hasty resort to deadly force was unnecessary. This is especially so where the Castro vehicle was neither an obstacle nor an obvious threat due to the fact it had driven beyond the collision, and lack of direct insight into either Quintero's state of mind.[13] (Cf. *People v. Oropeza* (2007) 151 Cal.App.4th 73, 82 [actual belief in self-defense must be founded on evidence, albeit direct or circumstantial].)

Under either scenario, the evidence was sufficient for the jury to conclude pure self-defense disproven beyond a reasonable doubt.

*Quintero*, 2021 WL 3720838, at *3–4 (footnotes in original).

Petitioner argues that the evidence reveals that he and his brother withdrew from the fight, got into their vehicle, and were about to leave when the Castros attacked, and thus, there was insufficient evidence to disprove self-defense. (ECF No. 1 at 7–9.) However, it was not objectively unreasonable for the state court to find that viewing the record in the light most favorable to the prosecution, a conclusion that withdrawal was not reasonably communicated (and thus, complete self-defense was disproven beyond a reasonable doubt) is not "so

---

[10] Although not directly at issue on appeal, we note this sudden-deadly-counterattack caveat is inapplicable to initial aggressors that commit a felonious, rather than simple, assault. (*People v. Salazar* (2016) 63 Cal.4th 214, 249.) The trial court nonetheless instructed the jury with this exception to withdrawal.

[11] There was no direct evidence introduced to prove either Quintero's state of mind.

[12] Victor argues Eraldo used deadly force with his hands. This, again, is a factual issue the jury could have reasonably resolved against the Quinteros based on the evidence, particularly the lack of both injury and direct evidence of mental state.

[13] The surveillance video depicts Joel, after being sideswiped, driving forward a few feet before braking to a complete stop. After Joel brakes to a complete stop, Eraldo is shot, and then Joel continues driving forward, albeit with one tire disabled from the collision.

insupportable as to fall below the threshold of bare rationality," <u>Coleman</u>, 566 U.S. at 656, in light of the Quinteros remaining within striking distance of the Castros the entire time leading up to the shooting, Joel repeatedly pointing at the Castros while walking back to the pump and at various times wielding a firearm, and the Castros' visible apprehension when Petitioner went back to retrieve his hat. Alternatively, it was not objectively unreasonable for the state court to find that viewing the record in the light most favorable to the prosecution, a conclusion that even if the Quinteros had withdrawn from fighting, responsive gunfire was unreasonable and unnecessary (and thus, complete self-defense was disproven beyond a reasonable doubt) is not "so insupportable as to fall below the threshold of bare rationality," <u>Coleman</u>, 566 U.S. at 656, given there was no reason to believe the Castros were armed with a weapon and the Castro vehicle had driven past and around the pump and thus, was not an obstacle or an obvious threat.

The Supreme Court has "made clear that <u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman</u>, 566 U.S. at 651. "When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review," <u>Cavazos</u>, 565 U.S. at 7, the Court finds that the state court's decision denying Petitioner's sufficiency of evidence claim regarding self-defense was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Petitioner has not demonstrated that "no 'fairminded juris[t]' could have reached the same judgment as the state court." <u>Shinn v. Ramirez</u>, 596 U.S. 366, 378 (2022) (alteration in original) (quoting <u>Harrington</u>, 562 U.S. at 102). Accordingly, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

### 3. Voluntary Manslaughter

In his second claim for relief, Petitioner asserts that there was insufficient evidence to prove that Petitioner aided and abetted Joel in shooting Eraldo. (ECF No. 1 at 12.) Respondent argues that a fairminded jurist could find that sufficient evidence proved voluntary manslaughter. (ECF No. 10 at 13.) This claim was raised on direct appeal to the California Court of Appeal,

1   which denied the claim in a reasoned opinion. The California Supreme Court summarily denied

2   Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the

3   Court will "look through" the summary denial and examine the decision of the California Court

4   of Appeal. See Wilson, 584 U.S. at 125.

5       In denying the sufficiency of the evidence claim regarding voluntary manslaughter, the

6   California Court of Appeal stated:

> Although Victor specifically argues the evidence did not prove he aided and
> abetted the shooting, we need not resolve that claim because the evidence
> sufficiently proved he directly committed voluntary manslaughter. (*People v.
> Guiton* (1993) 4 Cal.4th 1116, 1127 ["if there are two possible grounds for the
> jury's verdict, one unreasonable and the other reasonable, we will assume, absent
> a contrary indication in the record, that the jury based its verdict on the reasonable
> ground"].) Put simply, Victor admitted to killing Eraldo.[14]
>
> We reach this conclusion despite the fact Joel is last seen with the firearm outside
> the vehicle. The jury could reasonably infer he regained possession inside the
> vehicle. The firearm was clearly transferable between the Quinteros. The evidence
> strongly indicated Joel initially stole the firearm used in the shooting. Then,
> Victor first possessed it at the gas station. After committing a crime with it, he
> passed it to Joel, who also committed a crime with it. The Quinteros displayed no
> hesitation in either committing crimes with the firearm or passing it around.
> Victor's admission to shooting is sufficient to prove he again possessed the
> firearm, pulled the trigger, and committed manslaughter.
>
> Our holding is not inconsistent with the law. The jury was instructed to consider
> the evidence and charges separately for each Quintero.[15] Neither the state nor
> federal constitution forbids holding each Quintero separately liable as the lone
> shooter.[16] (*People v. Palmer* (2001) 24 Cal.4th 856, 858 ["If substantial evidence
> supports a jury verdict as to one defendant, that verdict may stand despite an
> apparently inconsistent verdict as to another defendant"].) For these reasons, we
> uphold the voluntary manslaughter conviction.

20  Quintero, 2021 WL 3720838, at *9 (footnotes in original).

21      It was not objectively unreasonable for the state court to find that viewing the record in

22  the light most favorable to the prosecution, a conclusion that Petitioner directly committed

---

[14] Although Victor rigorously asserts his statement, "I guess I killed him," is susceptible to varying interpretation, we must view it in the light most favorable to the verdict. (*Lindberg, supra*, 45 Cal.4th at p. 27.)

[15] CALCRIM Nos. 203 and 3515.

[16] Notably, "the People's use of irreconcilable theories of guilt or culpability, unjustified by a good faith justification for the inconsistency, is fundamentally unfair, for it necessarily creates the potential for—and, where prejudicial, actually achieves—a false conviction or increased punishment on a false factual basis for one of the accuseds." (*In re Sakarias* (2005) 35 Cal.4th 140, 159-160.) Conversely, such usage is "not ... improper as long as it [is] based on the record and made in good faith." (*People v. Farmer* (1989) 47 Cal.3d 888, 923.)

The prosecutor's argument in this case lands in the latter category. Based on the evidence, the prosecutor argued either Quintero was the shooter. We discern no bad faith in the argument.

1 voluntary manslaughter is not "so insupportable as to fall below the threshold of bare

2 rationality," <u>Coleman</u>, 566 U.S. at 656, given that a law enforcement officer testified overhearing

3 Petitioner state, "I guess I killed him." (4 RT 580.)

4       "When the deference to state court decisions required by § 2254(d) is applied to the state

5 court's already deferential review," <u>Cavazos</u>, 565 U.S. at 7, the Court finds that the state court's

6 decision denying Petitioner's sufficiency of evidence claim regarding voluntary manslaughter

7 was not contrary to, or an unreasonable application of, clearly established federal law. The

8 decision was not "so lacking in justification that there was an error well understood and

9 comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562

10 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it

11 should be denied.

12             4.   <u>Personal Firearm Use</u>

13       In his third claim for relief, Petitioner asserts that there was insufficient evidence to prove

14 that Petitioner personally used a firearm when Joel shot Eraldo. (ECF No. 1 at 18.) Respondent

15 argues that sufficient evidence proved personal firearm use. (ECF No. 10 at 14.) This claim was

16 raised on direct appeal to the California Court of Appeal, which denied the claim in a reasoned

17 opinion. The California Supreme Court summarily denied Petitioner's petition for review. As

18 federal courts review the last reasoned state court opinion, the Court will "look through" the

19 summary denial and examine the decision of the California Court of Appeal. <u>See</u> <u>Wilson</u>, 584

20 U.S. at 125.

21       In denying the sufficiency of the evidence claim regarding personal firearm use, the

22 California Court of Appeal stated:

> For the precise reasons the evidence sufficiently proved Victor committed
> voluntary manslaughter, it necessarily also proved he personally used a firearm to
> kill Eraldo.[17]

25 <u>Quintero</u>, 2021 WL 3720838, at *10 (footnote in original).

26 ///

---

[17] On appeal, the People claim Victor's earlier firearm use at the storefront constitutes using "a firearm in the commission" of manslaughter. (§ 12022.5, subd. (a).) We need not address the precise point because we find the evidence sufficient to prove direct commission—by firearm—of voluntary manslaughter.

It was not objectively unreasonable for the state court to find that viewing the record in the light most favorable to the prosecution, a conclusion that Petitioner personally used a firearm is not "so insupportable as to fall below the threshold of bare rationality," Coleman, 566 U.S. at 656, given that a law enforcement officer testified overhearing Petitioner state, "I guess I killed him," and the victim died of a gunshot wound. (4 RT 580, 636.) "When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review," Cavazos, 565 U.S. at 7, the Court finds that the state court's decision denying Petitioner's sufficiency of evidence claim regarding personal use of a firearm was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his third claim, and it should be denied.

5. Gang Enhancement

In his fourth claim for relief, Petitioner asserts that there was insufficient evidence to prove that the shooting was gang related. (ECF No. 1 at 21.) Respondent argues that a fairminded jurist could find the gang enhancement proven. (ECF No. 10 at 14.) This claim was raised on direct appeal to the California Court of Appeal, which denied the claim in a reasoned opinion. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Wilson, 584 U.S. at 125.

In denying the sufficiency of the evidence claim regarding the gang enhancement, the California Court of Appeal stated:

> To attack the gang enhancement, the Quinteros claim "the record lacked substantial evidence" the shooting "was done 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " Specifically, they contend the manslaughter verdict indicates the shooting was either due to provocation or self-defense—two mental states inconsistent with the gang enhancement. We disagree.
>
> "There are two 'prongs' to the [gang-related crime] enhancement. [Citation.] First, the prosecution is required to prove that the underlying felonies were

'committed for the benefit of, at the direction of, or in association with any criminal street gang.' [Citation.] Second, there must be evidence that the crimes were committed 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " (*People v. Rios* (2013) 222 Cal.App.4th 542, 561.)

Both prongs are proven here.[18] The jury could have concluded the motive underlying the entire episode was gang-related. After all, this was not the first time the Quinteros had accosted someone over wearing the color red. As the gang expert testified, confrontations between rival gangs are expected and normal. Viewing the evidence in the light most favorable to the judgment, this case was not exceptional.[19]

The surveillance videos showed Victor aggressively approach Rolando with a fireram [sic] despite having little to no interaction. These are abnormal actions the jury could readily conclude were gang-related based on the expert's testimony describing gang rivalry, the colored clothing involved, and Victor's prior history. Through this lens, the assaultive crimes preceding the shooting were associated with the Sureño gang, and because those assaults quickly culminated in a shooting, the shooting likewise was gang-associated.

The evidence was also sufficient to prove the crimes were committed with the intent to aid criminal conduct by gang members. For the initial assaultive crimes, the evidence is axiomatic. Those crimes were jointly committed by two gang members. It is not required the intent to aid criminal conduct apply to conduct *other* than the crimes actually committed. (*People v. Albillar* (2010) 51 Cal.4th 47, 66.) "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id.* at p. 68.)

Admittedly, whether the shooting itself was committed with the intent to aid criminal conduct by gang members is more complicated than simply tracing its origin to the preceding gang-related assault. This is so because there is scant evidence the Quinteros intended to jointly commit voluntary manslaughter. We conclude, however, the evidence was sufficient to prove it was committed with the intent to "promote, further, or assist" the preceding assaultive crimes.

Specifically, the jury could have reasonably found the shooting was intended to and necessary to permit the Quinteros to escape. Escape from the crime scene furthers or assists the preceding gang-related crimes by attempting to avoid liability or otherwise conclude the encounter. Indeed, they did flee and later resisted surrender. These actions are indicative of wrongdoing and constitute additional circumstantial evidence the shooting was not innocently committed.

Finally, we also reject the argument the specific intent to promote or assist any criminal conduct by gang members is inconsistent with self-defense. A person may concurrently entertain multiple intents. (See, e.g., *People v. Powell* (2018) 5 Cal.5th 921, 954-955.) For example, the jury here could have reasonably believed the shooting was committed both defensively *and* to escape liability for the gang-

---

[18] The parties' briefs focus on the second prong but we nonetheless examine the evidence for the first prong.

[19] This is true despite no evidence the Castros were actual gang rivals. The jury could conclude the Quinteros perceived them as rivals and initiated a gang-related encounter.

14

1   related assaults. For these reasons, we find the gang-related crime enhancement
2   sufficiently proven for each crime.

3   Quintero, 2021 WL 3720838, at *4–5 (footnotes in original).

4       It was not objectively unreasonable for the state court to find that viewing the record in
5   the light most favorable to the prosecution, a conclusion that the gang enhancement was
6   sufficiently proven with respect to the shooting is not "so insupportable as to fall below the
7   threshold of bare rationality." Coleman, 566 U.S. at 656. As noted by the appellate court, the jury
8   could have found the shooting was intended to aid the Quinteros in escaping the crime scene,
9   which furthers the preceding gang-related assault (which Petitioner does not challenge) by
10  attempting to avoid liability.

11      The Supreme Court has "made clear that Jackson claims face a high bar in federal habeas
12  proceedings because they are subject to two layers of judicial deference." Coleman, 566 U.S. at
13  651. "When the deference to state court decisions required by § 2254(d) is applied to the state
14  court's already deferential review," Cavazos, 565 U.S. at 7, the Court finds that the state court's
15  decision denying Petitioner's sufficiency of evidence claim regarding the gang enhancement was
16  not contrary to, or an unreasonable application of, clearly established federal law. The decision
17  was not "so lacking in justification that there was an error well understood and comprehended in
18  existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.
19  Petitioner has not demonstrated that "no 'fairminded juris[t]' could have reached the same
20  judgment as the state court." Ramirez, 596 U.S. at 378 (alteration in original) (quoting
21  Harrington, 562 U.S. at 102). Accordingly, Petitioner is not entitled to habeas relief on his fourth
22  claim, and it should be denied.

23  **B.  Prosecutorial Misconduct**

24      In the fifth claim for relief, Petitioner asserts that the prosecutor engaged in misconduct
25  during closing argument by improperly shifting and lessening the prosecution's burden of proof.
26  (ECF No. 1 at 24.) Respondent argues that the state court reasonably rejected the claim. (ECF
27  No. 10 at 16.) This claim was raised on direct appeal to the California Court of Appeal, which
28  denied the claim in a reasoned opinion. The California Supreme Court summarily denied

Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Wilson, 584 U.S. at 125.

In denying the prosecutorial misconduct claim, the California Court of Appeal stated:

> The Quinteros[20] "contend[ ] the prosecution shifted the burden of proof with respect to self-defense during closing argument, thereby lightening the prosecution's burden of proof and depriving [them of] fair trial due process under both the United States and California Constitutions." In claiming error, they argue the prosecutor misstated the law by telling the jury the Quinteros were guilty *unless* the Castros had no right to self-defense.
>
> In other words, if the Castros were justified in pursuing the Quinteros, then the Quinteros were guilty. We do not so narrowly view the prosecution argument.

### 1. Additional Background

Prior to closing arguments, the court instructed the jury with the law necessary to decide the case. As relevant to this issue, the jury was informed:

> "The defendant is not guilty of murder if he was justified in killing someone in self-defense or defense of another.
>
> [¶] ... [¶]
>
> "The People have the burden of proving beyond a reasonable doubt that the killing was not justified. If the People have not met this burden you must find the defendant not guilty of murder."

The jury was also instructed:

> "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in a heat of passion.
>
> [¶] ...[¶]
>
> "The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as a result of a sudden quarrel in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder."

Next, the instructions explained:

> "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed a person because he acted in imperfect self-defense or imperfect defense of another. If you conclude that the defendant acted in complete self-defense or defense of another, his action was lawful, and you must find him not guilty of any crime.

---

[20] This claim was raised by Joel and joined in by Victor.

> "The difference between complete self-defense or defense of another and imperfect self-defense or imperfect defense of another depends on whether the defendant's belief in the need to use deadly force was reasonable. The defendant acted in imperfect self-defense or imperfect self-defense of another if the defendant actually believed that he or someone else was in imminent danger of being killed or suffering great bodily injury and the defendant actually believed that immediate use of deadly force was necessary to defend against the danger, but a least one of those beliefs was unreasonable.... The People have the burden of proving beyond a reasonable doubt that the defendant was not acting in imperfect self-defense or imperfect defense of another. If the People have not met this burden, you must find the defendant not guilty of murder."

Last, the jury was told:

> "[A] person who engages in mutual combat or starts a fight has a right to self-defense, only if: One, he actually, and in good faith, tries to stop fighting; two, he indicates by word or by conduct to his opponent in a way that a reasonable person would understand that he wants to stop fighting and that he has stopped fighting; and, three, he gives his opponent a chance to stop fighting."

After these instructions, the prosecutor, in rebuttal argument, argued Victor was the "initial aggressor.... The question is do you see this as one continuous action or do you see this as three discrete breaks in action?" The prosecutor then emphasized the law necessary for an initial aggressor to withdraw and regain the right to self-defense. The argument continued by stating the Castros could pursue the Quinteros:

> "They can pursue an assailant until the danger of death or bodily injury has passed.

> "This is a gun. Now, I could understand if they're carrying around some brass knuckles and they're 25 feet off. All right.

> "This is a gun. A gun sends a projectile downrange, without any issue, in a second.

> "You are allowed to pursue an assailant.

> "You've seen the video. The first aggressors are Victor and Joel. Joel's actually pointed the gun at the guy's head. He is allowed to pursue until the danger of death or bodily injury or unlawful touching has passed. He doesn't have to retreat.

> "So the question is are you willing to provide [the Castros] the same rights of self-defense?"

At this point an objection was lodged and overruled.

The prosecutor resumed the argument,

> "Let's look at the video. They talk about how Joel walks back to the car.

"Well, watch the video. What does Joel actually do?

"... Joel's pointing back. Where is he pointing back to?

"You've been out to the scene. He's pointing back to where [the Castros] are. He's pointing back. He's not just walking to his car.

[¶] ... [¶]

"Again, you have to indicate, by words or conduct, that a reasonable person would understand you want to stop fighting.

"What does pointing at somebody you just pulled a gun on have to do with indicating you want to stop fighting?"

[¶] ... [¶]

"You can use the video. There is a slow motion. You can play it slow. You can play it fast. You can play it however you want to. But you will not be able to get away from the fact that after Joel has pointed at them, he's got a gun in his right hand yet again.

[¶] ... [¶]

"What about that indicates, by words or conduct, that a reasonable person would understand the fight is over?

"A gun being pulled out again, pointing at them. It doesn't.

[¶] ... [¶]

"There's nothing in the conduct that shows a reasonable person would understand it's over.

"It's a gun. It's a gun. At this point, he's ten feet closer than he was. He's pointed it at them. They are allowed to pursue their assailants. There has been no break in the fighting.

[¶] ... [¶]

"[The Castros], their right to use self-defense had not expired.

"They were the initial aggressors. They did not have the right to self-defense. They can only gain it if you find that they did those required three steps, and they did not communicate in a way that a reasonable person would understand it's over."

The prosecutor then briefly discussed aiding and abetting, and that either Quintero could have been the shooter based on the evidence.

The rebuttal argument concluded,

"[The Quinteros] lost their right of self-defense. You can lose it because they started it all. There was no break whatsoever, no break where a

18

reasonable person would think that the fight was over, and you have to go through that process, a reasonable person.

"[The Castros] can pursue their assailants.

"[The Quinteros] murdered Eraldo Castro. They started it. They never stopped it."

### 2. Analysis

" ' "The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's ... intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Stanley* (2006) 39 Cal.4th 913, 951.) "Regarding the scope of permissible prosecutorial argument, ' " 'a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' " ' " (*Ibid.*)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions" [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.) "To establish such error, bad faith on the prosecutor's part is not required." (*Id.* at p. 666.)

Here, were we to consider the lone statement, "[A]re you willing to provide [the Castros] the same rights of self-defense," in a vacuum, we might find error. A "defendant is not required to establish self-defense or the defense of others to be entitled to a not guilty verdict; he need only raise a reasonable doubt. It ultimately is the prosecution's burden to prove the absence of justification beyond a reasonable doubt." (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 63 (*Lloyd*).)

Considered in proper context, however, the prosecutor's remarks in this case are consistent with arguing withdrawal was disproven beyond a reasonable doubt. The prosecutor simply argued the fact the Castros were allowed to defend themselves meant the Quinteros had not withdrawn from the fight because the confrontation had not ceased.

To illustrate, just before the objection at issue, the prosecutor stated, "You are allowed to pursue an assailant" and the Castros were not required to retreat. This neither conflates nor misstates the law.[21] (*People v. Watie* (2002) 100 Cal.App.4th 866, 876-878 ["the right of a victim to defend himself ... is a relevant

---

[21] In the trial court, the Quinteros vigorously argued the prosecutor misstated the law by providing a right to self-defense to the Castros. They argued the Castros had no right to self-defense because they were not charged with a crime. This argument has no basis in law. As noted, a victim's right to self-defense is factually relevant. (*People v. Hardin* (2000) 85 Cal.App.4th 625, 632-634 (*Hardin*).)

consideration"]; *Hardin, supra*, 85 Cal.App.4th at pp. 632-634 [victim's right to self-defense appropriate subject of jury instructions.])

Immediately after the objection, the prosecutor resumed the point by arguing the Quinteros had not reasonably communicated withdrawal. The argument ultimately concluded, "[The Quinteros] lost their right of self-defense. You can lose it because they started it all. There was no break whatsoever ...."

In total, the prosecutor's remarks are best and most reasonably understood to mean the Castros could pursue the Quinteros *because* there was no withdrawal, i.e., the Castros actions were justifiable because the Quinteros had not withdrawn from the fight, not the other way around.

On this record, we do not lightly infer the prosecutor placed a burden upon the Quinteros to prove the Castros were unreasonable. We find no error with the prosecutor's argument because it was fair comment[22] on the evidence and did not otherwise undermine fundamental fairness.[23]

Quintero, 2021 WL 3720838, at *6–8 (footnotes in original).

In Darden v. Wainwright, 477 U.S. 168 (1986), the Supreme Court held that a prosecutor's improper comments violate the Constitution if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181 (internal quotation marks omitted) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). See Parker v. Matthews, 567 U.S. 37, 45 (2012) (finding Darden to be the clearly established federal law relevant to prosecutor's improper comments). As "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power,'" it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (citations omitted). In order to make a

---

[22] The Quinteros also chide the prosecutor for arguing they were generally unreasonable people. For example, as they fairly summarize the argument, the prosecutor stated "it was not reasonable for a person to drive around with a loaded firearm, not reasonable to retrieve a firearm and walk towards a person in anger, not reasonable to pull out a gun in front of a store, and not reasonable to hit someone who extends their hand for a handshake." We have reason to doubt the legal relevancy of these points. A gang member illegally possessing a firearm has a right to defend himself.

Nonetheless, there was no specific objection to this line of argument. The argument is thus forfeited. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328 ["It is well settled that making a timely and specific objection at trial, and requesting the jury be admonished (if jury is not waived), is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal."].)

Even were we to consider the matter, we would find no error. The instructions clearly informed the jury which facts involved a reasonableness element. The prosecutor's argument the Quinteros were unreasonable in general was irrelevant and not inflammatory. We do not believe the jury was prejudiced by these comments.

[23] The jury was also admonished numerous times the prosecutor bore the burden to prove facts beyond a reasonable doubt. (E.g., CALCRIM Nos. 220, 224, 505, 570, 571, & 3470.) Although the Quinteros argue the error here was exacerbated by the court overruling the objection (see, e.g., *Lloyd, supra*, 236 Cal.App.4th at p. 63 ["court's action in overruling the defendant's objection aggravated the situation"]), it was properly overruled because there was no error.

1    determination, the Court is to consider the comment in the context of the entire trial. Hein v.

2    Sullivan, 601 F.3d 897, 913 (9th Cir. 2010) (citing Darden, 477 U.S. at 182).

3          Petitioner argues that the prosecutor misstated the law with respect to a victim's right to

4    self defense. (ECF No. 1 at 13.) The California Court of Appeal, however, found that the

5    prosecutor did not misstate the law, and that determination is binding on this Court. See

6    Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . .

7    binds a federal court sitting in habeas corpus.").

8          Petitioner also argues that the prosecutor claimed that "one could reasonably believe the

9    victim acted in self-defense and that was more reasonable than the conduct of the defendants"

10   and "misled the jury into believing that reasonableness of the victim was sufficient to convict

11   while lessening the prosecutor's burden to not only prove the elements of the offense beyond a

12   reasonable doubt, but also the requirement that the right of self-defense is proven beyond a

13   reasonable doubt not to exist." (ECF No. 1 at 11.) "The government's closing argument is that

14   moment in the trial when a prosecutor is compelled to reveal her own understanding of the case

15   as part of her effort to guide the jury's comprehension." Gautt v. Lewis, 489 F.3d 993, 1013 (9th

16   Cir. 2007). "Counsel are given latitude in the presentation of their closing arguments, and courts

17   must allow the prosecution to strike hard blows based on the evidence presented and all

18   reasonable inferences therefrom." Ceja v. Stewart, 97 F.3d 1246, 1253–54 (9th Cir. 1996)

19   (internal quotation marks omitted) (quoting United States v. Baker, 10 F.3d 1374, 1415 (9th Cir.

20   1993)). Given such latitude, it was not objectively unreasonable for the state court to conclude

21   that "the prosecutor's remarks are best and most reasonably understood to mean the Castros

22   could pursue the Quinteros *because* there was no withdrawal, i.e., the Castros actions were

23   justifiable because the Quinteros had not withdrawn from the fight, not the other way around"

24   and thus, "[c]onsidered in proper context . . . the prosecutor's remarks in this case are consistent

25   with arguing withdrawal was disproven beyond a reasonable doubt." Quintero, 2021 WL

26   3720838, at *8. The prosecutor's comments did not "so infect[] the trial with unfairness as to

27   make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (internal

28   quotation marks omitted) (quoting Donnelly, 416 U.S. at 643).

1    Additionally, the jury was instructed on reasonable doubt and the right to self-defense,

2    that nothing the attorneys say (including remarks in their opening statements and closing

3    arguments) is evidence, and that the People have the burden of proving beyond a reasonable

4    doubt that the killing was not justified and that the defendant was not acting in self-defense or

5    defense of another. (5 CT 997, 1003, 1010–11, 1036, 1042, 1060–63.) "[U]nder Supreme Court

6    precedent, a jury is presumed to follow the trial court's instructions." Deck v. Jenkins, 814 F.3d

7    954, 979 (9th Cir. 2016) (citing Weeks v. Angelone, 528 U.S. 225, 234 (2000)). Petitioner

8    presents no evidence suggesting that the jury departed from the trial court's instructions

9    regarding the prosecution's burden of proof.

10    Based on the foregoing, the Court finds that the state court's denial of Petitioner's

11    prosecutorial misconduct claim was not contrary to, or an unreasonable application of, clearly

12    established federal law, nor was it based on an unreasonable determination of fact. The decision

13    was not "so lacking in justification that there was an error well understood and comprehended in

14    existing law beyond any possibility of fairminded disagreement." Richter, 562 U.S. at 103.

15    Accordingly, Petitioner is not entitled to habeas relief on the prosecutorial misconduct claim, and

16    it should be denied.

17    **V.**

18    **RECOMMENDATION**

19    Based on the foregoing, the Court HEREBY RECOMMENDS that the petition for writ of

20    habeas corpus be DENIED.

21    This Findings and Recommendation is submitted to the assigned United States District

22    Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

23    Rules of Practice for the United States District Court, Eastern District of California. Within

24    **THIRTY (30) days** after service of the Findings and Recommendation, any party may file

25    written objections with the court and serve a copy on all parties. Such a document should be

26    captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the

27    objections shall be served and filed within fourteen (14) days after service of the objections. The

28    assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

22

§ 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 7, 2024**

UNITED STATES MAGISTRATE JUDGE

23